UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOYCE A. LITTLE,<br><br>   Plaintiff,<br><br>   v.<br><br>ADRIAN FENTY, D.C. Mayor, *et al.*,<br><br>   Defendants. | Civil No. 09-2308  (CKK) |

MEMORANDUM OPINION
(March 2, 2010)

Plaintiff, Joyce A. Little, representing herself *pro se*, has brought suit against Defendants District of Columbia Mayor Adrian Fenty and 11 Members of the Council of the District of Columbia ("Council Defendants") (collectively, "Defendants"). Plaintiff's lawsuit is principally directed at challenging the legitimacy of (a) the Jury and Marriage Amendment Act of 2009 ("JAMA"), which amended District law to provide that legal, same-sex marriages entered into in other jurisdictions will be legally recognized in the District, and (b) the Religious Freedom and Civil Marriage Equality Amendment Act of 2009, Bill 18-482 ("Bill 18-482"), which was recently submitted to Congress for the required passive review period and is intended to expand the definition of marriage in the District to include same-sex couples. As set forth in Plaintiff's Amended Complaint, she contends that both JAMA and Bill 18-482 are in violation of the District of Columbia Self-Government and Governmental Reorganization Act ("Home Rule Act") as well as the Defense of Marriage Act ("DOMA"). Plaintiff also alleges that the legislation violates her rights under the Religious Freedom Restoration Act ("RFRA"). Based on these asserted causes of action, Plaintiff seeks an order from the Court permanently enjoining

Defendants from enacting any further legislation permitting same-sex marriages in the District, repealing JAMA, declaring Bill 18-482 unlawful, and opening an ethics and corruption investigation into the conduct of Mayor Fenty and the Council.

This matter presently comes before the Court on two motions to dismiss filed by the Council Defendants and Mayor Fenty respectively. *See* Council Defs.' MTD, Docket No. [32]; Def. Mayor's MTD, Docket No. [33]. Plaintiff opposes those motions and also seeks leave to amend her complaint for a second time. *See* Pl.'s Opp'n/Mot. to Amend, Docket No. [34]. After a thorough review of the parties' submissions, applicable case law, the relevant statutory authority, and the record of this case as a whole, the Court shall GRANT both the Council Defendants' [32] and Mayor Fenty's [33] Motions to Dismiss insofar as they each move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and shall DENY Plaintiff's [34] Motion for Leave to Amend as futile, for the reasons set forth below. Accordingly, as this case is dismissed for a lack of jurisdiction, the Court emphasizes that it does not reach the merits of Plaintiff's claims or of the underlying legislation at issue.

## I. BACKGROUND

*A.     Statutory and Legislative Background*

1.     <u>JAMA</u>

On May 5, 2009, the Council of the District of Columbia (the "Council") approved the Jury and Marriage Amendment Act of 2009, referred to herein as "JAMA," by a vote of 12 to 1. *See* D.C. Act. 18-70; 56 D.C. Reg. 3797 (May 15, 2009). As indicated above, the measure amended District law to provide that legal, same-sex marriages entered into in another

jurisdiction will be legally recognized in the District of Columbia. The Act was signed by the Mayor on May 6, 2009, transmitted to Congress, and became law on July 6, 2009. *See* D.C. Code § 46-405.01 (2009).

        2.       <u>Bill 18-482</u>

On December 1, 2009, the Council passed the Religious Freedom and Civil Marriage Equality Amendment Act of 2009, Bill 18-482, referred to herein as "Bill 18-482," by a vote of 11 to 2.[1] The legislation expressly expanded the definition of marriage in the District to include same-sex couples. A second and final vote occurred on December 15, 2009, passing by the same margin. *See id.* The Mayor signed the legislation on December 18, 2009, and the legislation was subsequently submitted to Congress for the required passive review period. *See id.* As of the filing of this Memorandum Opinion, the legislation remained pending before Congress.

    B.    *Factual Background*

Plaintiff, representing herself *pro se*, filed the above-captioned lawsuit on December 7, 2009. *See* Compl., Docket No. [1]. As indicated above, Plaintiff alleges that both JAMA and Bill 18-482 are *ultra vires* and violate the Home Rule Act and the Defense of Marriage Act. *Id.* at 3. Plaintiff later amended her Complaint on December 14, 2009, to add a claim under RFRA. *See* Am. Compl., Docket No. [31]. Specifically, Plaintiff alleges that she owns and operates a private tax consulting and preparation business in the District and engages in insurance and annuity underwriting services as well, and that "[t]his legislation would force [her] to provide services [to] same-sex couples therefore running counter to [her] own religious beliefs" in

---

[1] The text of the legislation as well as related voting and hearing information is available online at the Council's website, located at: http://www.dccouncil.washington.dc.us (last viewed on 3/1/10).

violation of RFRA. *Id.* at 7.[2] As relief, Plaintiff requests that the Court permanently enjoin the District from enacting any further legislation permitting same-sex marriages, repeal JAMA and declare Bill 18-482 unlawful. *Id.* at 8. Finally, she asks the Court to "open an ethics and corruption investigation into the mayor and the council" for alleged violations of "the legal boundaries of the Home Rule Charter." *Id.* at 9.

Along with the filing of her complaint on December 7, 2009, Plaintiff simultaneously filed a [2] Motion for Preliminary Injunction Staying the Final Vote on D.C. Bill 19-482 "Religious Freedom of Marriage Equality Act of 2009." *See* Pl.'s Mot. for P.I., Docket No. [2]. Plaintiff's motion principally focused on the then-pending second vote by the Council regarding Bill 18-482, and requested the Court issue an emergency order enjoining the Council from voting on the legislation. The Court ordered expedited briefing on Plaintiff's request for a preliminary injunction and subsequently denied the motion on the morning of December 15, 2009, finding that Plaintiff had failed to show any likelihood of irreparable harm and was unlikely to succeed on the merits. *See* Dec. 15, 2009 Mem. Op., Docket No. [26]. As is indicated above, the second vote by the Council took place later that day, and the legislation passed. *See supra* at p. 3.

The Court subsequently held an on-the-record telephone conference call with all parties, at which time the Court set a briefing schedule permitting Defendants to file a motion to dismiss that addressed any jurisdictional arguments previously raised in their briefing regarding Plaintiff's motion for a preliminary injunction as well as any other dispositive grounds. *See* Dec. 15, 2009 Order, Docket No. [30]. Pursuant to that schedule, Council Defendants and Mayor

---

[2] All citations to the Amended Complaint are to the relevant page numbers of the document, as it appears on the public docket.

Fenty filed their respective motions to dismiss on January 8, 2010. *See* Council Defs.' MTD, Docket No. [32]; Def. Mayor's MTD, Docket No. [33]. On January 15, 2010, Plaintiff filed a combined opposition to Defendants' motions as well as a motion for leave to amend the complaint. *See* Pl.'s Opp'n/Mot. to Amend, Docket Nos. [34] & [35]. Council Defendants and Mayor Fenty each timely filed a reply in support of their respective motions to dismiss and opposition to Plaintiff's motion for leave to amend. *See* Council Defs.' Reply/Opp'n Docket Nos. [36] & [38]; Def. Mayor's Reply/Opp'n, Docket Nos. [37] & [39]. Plaintiff declined to file a reply in support of her motion for leave to amend. Accordingly, the parties' motions are now fully briefed and the matter is ripe for the Court's review and resolution.

## II. LEGAL STANDARD

*A.     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)*

Defendants' motions to dismiss assert, in relevant part, that Plaintiff's Amended Complaint should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).[3] Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *see also Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d

---

[3] While Defendants do not clearly indicate that they move for dismissal of Plaintiff's claims for lack of standing pursuant to Rule 12(b)(1), it is well established that motions to dismiss for lack of standing are properly considered as challenging the Court's subject matter jurisdiction and should be reviewed under Rule 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (explaining that "the defect of standing is a defect in subject matter jurisdiction"); *see also City of Harper Woods Employees' Retirement Sys. v. Olver*, 577 F. Supp. 2d 124, 128 (D.D.C. 2008) ("In this jurisdiction, a motion to dismiss for lack of standing is treated as a challenge to the subject matter jurisdiction of the court, and is properly analyzed under Rule 12(b)(1)."), *aff'd* 589 F.3d 1292 (D.C. Cir. 2009).

15, 19 (D.D.C. 1998). A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record.'") (internal citations omitted). However, "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350).

Where, as here, an action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21; *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). "Courts of this Circuit have interpreted the Supreme Court's instruction in *Haines* as encompassing all filings submitted by *pro se* litigants, not just their pleadings." *Lindsey v. United States*, 448 F. Supp. 2d 37, 44 (D.D.C. 2006) (internal citations omitted). The District of Columbia Circuit has further instructed that lower courts may use supplemental materials to clarify a *pro se* plaintiff's claims without converting a motion to dismiss into one for summary judgment. *See Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (explaining that lower courts may "consider supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged") (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998)).

B.   *Motion to Amend Pursuant to Rule 15*

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleadings only once as a matter of course. Where, as here, a party seeks to amend its pleadings for a second time, they may do so only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). The decision whether to grant leave to amend a complaint is within the discretion of the district court, but leave "should be freely given unless there is a good reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996) (internal citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'").

### III.  DISCUSSION

A.   *Defendants' Motions to Dismiss*

As indicated above, Defendants have moved for dismissal of Plaintiff's Amended Complaint arguing, *inter alia*, that Plaintiff's claims should be dismissed for lack of standing pursuant to Rule 12(b)(1). *See generally* Council Defs.' MTD at 5-10; Def. Mayor's MTD at 4-6. Because the Court agrees with Defendants that Plaintiff lacks standing in the instant action to assert a claim under RFRA or to challenge either JAMA or Bill 18-482 for allegedly violating the Home Rule Act and DOMA, the Court need not reach Defendants' alternative arguments and

shall dismiss Plaintiff's Amended Complaint for a lack of standing pursuant to Rule 12(b)(1).

Specifically, Defendants assert that Plaintiff lacks standing to bring any of the asserted claims in her Amended Complaint because her allegations do not state any legally cognizable injury in fact. Council Defs.' MTD at 5-10; Def. Mayor's MTD at 4-6. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). A core element of Article III's case-or-controversy requirement is that a plaintiff must establish that he or she has standing to sue. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). To satisfy this burden of establishing standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751 (1984); *see also Nat'l Wildlife Fed'n v. Hodel,* 839 F.2d 694, 704 (D.C. Cir. 1988). The party invoking federal jurisdiction "bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. Indeed, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury is particularized as to him." *Raines,* 521 U.S. at 819.

For that reason, the Supreme Court has observed that where, as here, "the plaintiff is not h[er]self the object of the government action or inaction [s]he challenges," standing is "'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen*, 468 U.S. at 758). The individual seeking to challenge government action "must be adversely affected by that action." *Dimond v. District of Columbia*, 792 F.2d 179, 190 (D.C. Cir. 1986). "Injury consisting

solely of a government's alleged failure to act in accordance with law" does not "amount to [a] judicially cognizable injury in fact for purposes of Article III standing." *Id.*; *see also Allen*, 468 U.S. at 754 ("This Court has repeatedly held that an asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court."). Nor is an assertion of a "generalized grievance" sufficient to confer standing where the alleged harm is "not only widely shared, but is also of an abstract and indefinite nature — for example, harm to the 'common concern for obedience to law.'" *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998). "The abstract nature of the harm — for example, injury to the interest in seeing that the law is obeyed — deprives the case of the concrete specificity" necessary to demonstrate standing; in such cases, "the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." *Id.*

With these principles in mind, it is readily apparent that Plaintiff has not pled any harm or personal injury sufficient to confer standing as to any claims in this action. Plaintiff is a self-described "Christian and a District voter against gay marriage, corruption, and lawlessness in the District of Columbia" and is also the owner of "a tax preparation and life insurance practice in the District of Columbia." Am. Compl. at 2, 3. She avers that "[a]s a Christian, a voter, and a concerned citizen, [she is] appalled at the high level of outright immorality, corruption, and blatant lawlessness in the government of the District of Columbia" — in particular, the Defendants' decision to promulgate the legislation currently at issue, which Plaintiff asserts is in violation of the Home Rule Act and DOMA as well as her rights under RFRA. *Id.* at 2. As is made clear above, however, "[i]njury consisting solely of a government's alleged failure to act in accordance with the law" does not "amount to [a] judicially cognizable injury in fact for purposes

9

of Article III standing." *Dimond*, 792 F.2d at 190.  "'[A] plaintiff raising only a generally available grievance about government — claiming only harm to [her] and every citizen's interest in proper application of the [] laws, and seeking relief that no more directly and tangibly benefits [her] than it does the public at large — does not state an Article III case or controversy.'" *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 601 (2007) (quoting *Lujan*, 504 U.S. at 573-74).  As such, Plaintiff's allegation that Defendants have violated federal and District law is, by itself, insufficient to confer standing under RFRA or to challenge the legislation as allegedly in violation of the Home Rule Act and DOMA

Plaintiff nonetheless asserts that she has standing — at least as to her claim under RFRA — because the legislation at issue "will cause [her] irreparable economic harm."  Pl.'s Opp'n/Mot. to Amend at 7.  While Plaintiff appears to dispute Defendants' assertions that she lacks standing only as to her claim under RFRA and does not address Defendants' arguments that she also lacks standing to bring claims based upon alleged violations of DOMA and the Home Rule Act, *see id.* at 4, it is readily apparent that Plaintiff's arguments — even if construed as asserting standing as to all claims in her Amended Complaint — are without merit.  Accordingly, the Court finds that Plaintiff lacks standing to assert any of the alleged claims set forth in her Amended Complaint.[4]

---

[4] Alternatively, the Court finds that Plaintiff has conceded that she lacks standing as to her non-RFRA claims because she had the opportunity to respond to the Defendants' arguments but did not do so.  As previously noted, Plaintiff's opposition briefing addresses only her standing under RFRA and does not address Defendants' argument that she lacks standing to bring claims based upon alleged violations of DOMA and the Home Rule Act.  *See* Pl.'s Opp'n/Mot. to Amend at 4.  "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98

As set forth in her Amended Complaint, "Plaintiff owns and operates a private tax consulting and preparation business in the District of Columbia, [and] plaintiff also underwrites insurance and annuities." Am. Compl. at 7. Plaintiff avers that the pending Bill 18-482, if passed, "would have a negative economic impact on [her] business forcing her to prepare tax returns, life insurance and annuity contracts for same-sex married couples or risk litigation which would force [her] out of business." *Id.* at 2; *see also id.* at 7 ("This legislation would force me to provide services to same-sex couples therefore running counter to my religious beliefs."). Plaintiff thus argues that the Defendants' alleged actions with respect to Bill 18-482 "will cause [her] irreparable economic harm." Pl.'s Opp'n/Mot. to Amend at 7. According to Plaintiff, the pending legislation will leave her with "no legal ability to refuse service to anyone[,] leaving [her] three choices: (1) consciously violate [her] faith, (2) endure endless legal suits of discrimination ending in economic collapse or (3) voluntarily get[] out of business, clos[e] [her] doors and set[] up shop in another city." *Id.*

In other words, Plaintiff alleges that *if* Bill 18-482 is enacted into law, she *may* be asked to prepare tax services or life insurance/annuity contracts for same-sex married couples and that *if* she refuses to do so, the individuals *may* bring a lawsuit against her (although on what legal basis Plaintiff does not say), which in turn *may* result in economic harm to her business. Such

---

Fed. Appx. 8 (D.C. Cir. 2004); *see also Franklin v. Potter,* 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address it in his response). The Court previously advised Plaintiff that her failure to respond to the Defendants' motions may result in the Court treating the motions as conceded. *See* 12/15/09 Order, Docket No. [30] at 2. Accordingly, while the Court ultimately concludes that Plaintiff lacks standing as to all claims asserted in her Amended Complaint, it finds in the alternative that Plaintiff's failure to address Defendants' arguments may be treated as a concession that she lacks standing on her non-RFRA claims.

allegations are entirely speculative and wholly insufficient to establish standing. Plaintiff does not allege that she has any present clients who would become same-sex marriage partners. Moreover, she provides no indication of how she is presently being harmed by JAMA, of which Plaintiff also complains. As indicated above, JAMA has been in effect since July 6, 2009 and provides that legal, same-sex marriages entered into in another jurisdiction will be legally recognized in the District of Columbia. *See supra* at pp. 2-3. Yet Plaintiff does not identify a ***single*** instance since July 6, 2009, when she has been "forced" to provide tax or insurance services — or had to refuse to provide such services — to same-sex couples whose marriage is recognized in the District under JAMA. Indeed, such a situation may never occur. Similarly, as Defendants point out, the District has permitted domestic partners to file joint tax returns since 2007.[5] *See* D.C. Code § 47-1805.01(f) ("Domestic partners may file either a joint return or separate returns on a combined form prescribed by the Mayor as if the federal government recognized the right of domestic partners to file jointly."). Notwithstanding the fact that same-sex domestic partners have been able to avail themselves of her services for several years and that Plaintiff herself represents in her opposition briefing that she currently has "some homosexual clients," Pl.'s Opp'n/Mot. to Amend at 5, Plaintiff does not proffer any facts indicating that she has previously been confronted with same-sex couples seeking her help to prepare tax returns, life insurance contracts and/or annuities for domestic partners.

      It is well settled that to establish standing sufficient to bring this action, Plaintiff must

---

[5] While the Mayor's briefing states that section 47-1805.01(f) has been in effect since 2006, *see* Def. Mayor's MTD at 5, the statute's legislative history indicates that the relevant provision, although approved on December 28, 2006, did not become effective until March 14, 2007. *See* 2006 D.C. Sess. Law. 16-292, 1 (2006).

allege that she has "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). This she has not done. As such, she lacks standing in the instant action to assert a claim under RFRA or to seek an order repealing either JAMA or Bill 18-482 for allegedly violating the Home Rule Act and DOMA. In addition, the Court notes that Plaintiff's request for a permanent injunction to "prohibit[] the vote to be taken by the D.C. City Council scheduled for December 15, 2009 regarding [Bill 18-482]" is now moot. Lacking subject matter jurisdiction, the Court is also without authority to "[t]o open an ethics and corruption investigation into the mayor and the council" or to cause the removal of any elected officials from office, as requested by Plaintiff. The Court shall therefore GRANT both the Council Defendants' [32] and Mayor Fenty's [33] Motions to Dismiss Plaintiff's Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

      B.      *Plaintiff's Motion for Leave to Amend*

Pending before the Court as well is Plaintiff's [34] Motion for Leave to Amend, which was filed simultaneously with her opposition briefing to Defendants' motions to dismiss. Plaintiff seeks leave to amend her complaint for a second time to add: (1) a claim under RFRA that passage of the legislation at issue violates her religious beliefs; and (2) a claim under the Voting Rights Act of 1965, the Fifteenth Amendment and the Home Rule Act based upon allegations that she was denied the right to vote in a referendum and/or initiative on same-sex marriage within the District. *See* Pl.'s Opp'n/Mot. to Amend at 3. Defendants oppose Plaintiff's motion for leave, urging that the proposed amendments should be denied as futile. The Court

agrees, for the reasons set forth below.

First, Plaintiff's proposed claim under RFRA is indistinguishable from Plaintiff's existing RFRA claim, as set forth in her Amended Complaint, which the Court dismisses herein for lack of standing. *See* Am. Compl. at 2 (asserting claim under RFRA); *see also id.* at 7 ("This legislation would force me to provide services [to] same-sex couples therefore running counter to my religious beliefs . . . . Plaintiff believes this requirement is in violation of her rights under [RFRA]."). She alleges no new factual allegations to support this claim. As such, the proposed claim suffers from the same flaws as the RFRA claim previously set forth in the Amended Complaint — namely, that Plaintiff lacks standing to bring such a claim. Accordingly, Plaintiff's [34] Motion for Leave to Amend is DENIED as futile, insofar as she seeks leave to amend her complaint again to add an identical claim under RFRA.

Plaintiff's request for leave to add a claim under the Voting Rights Act of 1965, the Fifteenth Amendment and the Home Rule Act is equally futile. Plaintiff's proposed claim appears to be based on allegations that Councilmember Phil Mendelson, one of the named Defendants in this action, wrote two letters to the D.C. Board of Elections and Ethics in June and October of 2009, in which he "petition[ed] the Board to deny any petition for referendum or initiative relating to recognizing marriage being between one man and one woman citing the DC Human Rights Act as the legal basis for the denial of the referendum or initiative." Pl.'s Opp'n/Mot. to Amend at 2-3 & Ex. 1 (proposed Second Amended Complaint) at p. 16-19 (copies of October 16, 2009 Letter and June 9, 2009 Letter from Councilmember Mendelson to Mr. Kenneth J. McGhie, General Counsel of the D.C. Board of Elections and Ethics). Plaintiff alleges that in so doing, Councilmember Mendelson "illegally petitioned the independent agency

of the Board of Elections to deny Plaintiff as a voter the right to referendum or initiative," and therefore acted in violation of the Voting Rights Act of 1965, the Fifteenth Amendment and the Home Rule Act. *Id.* at 8. Similarly, Plaintiff alleges that Councilmember Jack Evans, who is also a named Defendant in this action, "engaged in voter intimidations during the October 26, 2009 public hearing regarding Bill 18-482" when he allegedly made the following statement indicating that he was not in favor of any attempts to appeal to Congress to prevent Bill 18-482 from going into effect: "I tell everyone to be wary of that course of action. I do not look at that in a positive light, to say the least . . . . So to circumvent the government of the District of Columbia because you think you may get a better deal on the Hill, I will not look kindly upon, in any way, shape or form. So I just want to put that admonishment out there. Do with it as you may; do with it as you may." *Id.* at 12. Based on these allegations, Plaintiff seeks to amend her complaint to add a claim that Defendants have denied Plaintiff, an African American woman, the right to vote in violation of the Voting Rights Act of 1965, the Fifteenth Amendment and the Home Rule Act. As relief, Plaintiff requests that the Court "grant Plaintiff [the] right of an Initiative which Plaintiff filed on December 23, 2009 with the Board of Elections." *Id*. Ex. 1 (proposed Second Amended Complaint) at p. 3.

      The Court finds that Plaintiff's allegations do no support a viable claim under either the Voting Rights Act of 1965 or the Fifteenth Amendment. Plaintiff has failed to proffer any facts supporting a claim that her right to vote was "denied or abridged . . . on account of race, color, or previous condition of servitude," U.S. CONST., amend XV, § 1, or that Defendants imposed a "voting qualification or prerequisite to voting or standard, practice, or procedure . . . in a manner which results in a denial or abridgement of the right . . . to vote on account of race or color or

[membership in a language minority group]," 42 U.S.C. § 1973.  Rather, at heart, Plaintiff complains about the D.C. Board of Elections and Ethics' decision denying the proposed initiative petition, arguing that this decision effectively denied her the right to vote in a referendum and/or initiative on same-sex marriage within the District.  Quite plainly, neither the Voting Rights Act of 1965 nor the Fifteenth Amendment grant Plaintiff an affirmative right to the requested local referendum, a question which is governed by local District law.  *See* D.C. Code § 1-1001.16 (establishing initiative and referendum procedures).[6]  Accordingly, as Plaintiff asserts no viable federal claims, Plaintiff's sole remaining claim at issue is asserted under the Home Rule Act.  The Court therefore would have jurisdiction over this claim, if at all, only under 28 U.S.C. § 1367.  *See Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007) (finding that "the district court could not have entertained plaintiffs' claim under the Home Rule Act unless the court had supplemental jurisdiction over the claim").  Section 1367 in turn provides that "in any civil action of which the district courts have *original* jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As set forth above, Plaintiff's original federal claims have been dismissed for lack of jurisdiction as Plaintiff does not have standing to bring any of her asserted federal law claims.  Because the

---

[6] The Court notes that the relevant D.C. statutory provisions themselves afford an individual an avenue to appeal a decision by the Board of Elections and Ethics' denying his or her request for an initiative or referendum.  *See* D.C. Code § 1-1001.16(b)(3) ("If the Board refuses to accept any initiative or referendum measure submitted to it, the person or persons submitting such measure may apply, within 10 days after the Board's refusal to accept such measure, to the Superior Court of the District of Columbia for a writ in the nature of mandamus to compel the Board to accept such measure.").

Court lacked original jurisdiction over Plaintiff's action, it cannot exercise its supplemental jurisdiction and would therefore lack jurisdiction to entertain Plaintiff's state law claim. *See Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997) ("If the District Court had original jurisdiction, but dismissed for non-jurisdictional reasons, then it could maintain supplemental jurisdiction at its discretion. If it dismissed the underlying claim on jurisdictional grounds, then it could not exercise supplemental jurisdiction."); *Decatur Liquors*, 478 F.3d at 363 ("In light of the insubstantiality of plaintiffs' federal claims, we conclude that the district court lacked federal-question jurisdiction over those claims and thus supplemental jurisdiction over the Home Rule Act claim.").[7] Accordingly, Plaintiff's [34] Motion for Leave to Amend is DENIED as futile, insofar as she seeks leave to amend her complaint to add a claim under the Voting Rights Act of 1965, the Fifteenth Amendment and the Home Rule Act, because Plaintiff has failed to state a viable claim under either the Voting Rights Act of 1965 or the Fifteenth Amendment and the Court cannot exercise supplemental jurisdiction over Plaintiff's claim brought pursuant to the Home Rule Act.

Finally, the Court notes that although Plaintiff has asserted at various points in her Amended Complaint that she "is petitioning the Court for an extension of time to confer with and

---

[7] Alternatively, the Court notes that 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Siblely Intern.*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). As this case is in its earliest stages and Plaintiff's remaining claim under the Home Rule Act implicates the validity of the District's statutory provisions governing the initiative and referendum process, the Court would alternatively decline to exercise its supplemental jurisdictional in this case.

obtain professional legal counsel," *see, e.g.,* Am. Compl. at 2, 7, Plaintiff did not make that request during the Court's on-the-record telephone conference call with the parties to discuss a briefing schedule for this matter. Indeed, Plaintiff has at no time communicated to the Court — either in writing or orally — that an extension of time or stay of this case was warranted. To the contrary, Plaintiff explicitly agreed to the briefing schedule set forth by this Court during its on-the-record discussion with the parties on December 15, 2009. *See* Dec. 15, 2009 Order, Docket No. [30].

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT both the Council Defendants' [32] and Mayor Fenty's [33] Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and shall DENY Plaintiff's [34] Motion for Leave to Amend as futile. This case is hereby DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: March 2, 2010

                       ___/s/_____
                       **COLLEEN KOLLAR-KOTELLY**
                       United States District Judge